# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| DELL TECHNOLOGIES INC. and | § | |
| DELL GLOBAL B.V. (Singapore Branch), | § | |
| | § | Civil Action No.    1:18-cv-00666 |
| Plaintiffs, | § | |
| | § | |
| vs. | § | JURY TRIAL DEMANDED |
| | § | (subject to express waiver) |
| TIVO CORPORATION | § | |
| ROVI CORPORATION | § | |
| SONIC SOLUTIONS LLC, and | § | |
| SONIC SOLUTIONS | | |
| Defendants. | | |

### NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1331, 1332, 1338, 1441, 1454, and 1446, Defendants TiVo Corporation, Rovi Corporation, Sonic Solutions LLC, and Sonic Solutions (collectively, "Defendants") hereby remove Cause No. 18-0822-C26, *Dell Technologies Inc., and Dell Global B.V. v. TiVo Corporation et al.* ("the Lawsuit") from the 26th Judicial District Court of Williamson County, Texas to the United States District Court for the Western District of Texas, Austin Division.

### Statement of the Case

## I.    Introduction

1.    The Lawsuit is rooted in Plaintiffs' attempts to recover portions of their excessive and unwarranted settlement in a patent infringement litigation with third parties, Audio MPEG Inc. ("Audio MPEG"), Società Italiana Per Lo Sviluppo Dell'Electronica, S.P.A. ("Sisvel"), U.S. Philips Corporation, TDF SAS, and Institut für Rundfunktechnik, United States District Court for the Eastern District of Virginia, Case No. 1:15-cv-1674 ("the Audio MPEG Action").  The

Lawsuit is an attempt to circumvent the dispositive contractual relationship between Dell Global B.V. and Sonic Solutions and shift responsibility for the settlement that certain Dell entities paid to Audio MPEG and other plaintiffs in the Audio MPEG Action.  The settlement was ostensibly for the alleged patent infringement by Dell products that had various third parties' software installed on them, including CyberLink, Nero AG, and Sonic Solutions software.  The software licensed by Sonic Solutions LLC to Dell was sold under the trade name "Roxio Creator."

2.      As explained in detail below, this Lawsuit is properly removed to Federal Court for at least two independent reasons:  (1) Defendants have filed counterclaims in the Lawsuit raising federal questions of patent law over which federal courts have exclusive jurisdiction; and (2) Plaintiffs fraudulently joined Dell Technologies Inc. – a non-party to the contract between Sonic Solutions and Dell Global B.V. and to whom no representations or omissions were made – to this suit in order to defeat diversity.  Additionally, this Court should exercise its discretion to find supplemental jurisdiction over Plaintiffs' remaining state law claims because they derive from the same common nucleus of operative fact as Defendants' patent law claims and all claims should be tried in one judicial proceeding.

## II.      Procedural History

3.      On July 7, 2018, Plaintiffs filed a Complaint in the 26th Judicial District Court of Williamson County, Texas.  This Complaint named Rovi Corporation, Sonic Solutions LLC, and Sonic Solutions, and TiVo Corporation as Defendants.  The copy of the Complaint was served on the Defendants on July 26, 2018.  The Complaint alleges that Plaintiffs suffered economic damages as a result of Defendants' alleged breach of contract, negligent misrepresentation, fraudulent misrepresentation, and fraudulent nondisclosure.

4.      On August 8, 2018, Defendants responded to the Complaint.  In addition to affirmative defenses and special exceptions, Defendants filed a number of counterclaims against Plaintiffs arising under federal patent laws.  Specifically, in light of Plaintiffs' allegations that Defendants breached the agreement at issue by allegedly providing Dell with software that infringed United States Patents No. 5,323,396 ("the '396 patent"), No. 5,777,992 ("the '992 patent"), and 5,539,829 ("the '829 patent") (collectively, "Dell Product Patents"), Defendants filed counterclaims alleging noninfringement and patent exhaustion of the Dell Product Patents.

**Grounds for Removal**

**I.      Removal Is Proper Under 28 U.S.C. § 1454.**

5.      The Court has original jurisdiction over the Lawsuit under 28 U.S.C. § 1454 because it is "[a] civil action in which [a] party assert[ed] a claim for relief arising under [an] Act of Congress relating to patents."  28 U.S.C. § 1454.

6.      Section 1454 was enacted in September 2011 as part of the Leahy–Smith America Invents Act (AIA).  *See Donahue v. Tokyo Electron Am., Inc.,* 2014 WL 12479285, at *3 (W.D. Tex. Sept. 2, 2014).  This section "marks a clear change in removal procedure."  *Id.* Traditionally, anticipated defenses to a plaintiff's state law claims that raise a federal question were insufficient to provide federal question jurisdiction.  However, "[u]nder § 1454, a defendant with a patent or copyright counterclaim is no longer bound by a plaintiff's well-pleaded state law complaint to litigate in state court."  *Team Express Distrib. LLC v. Junction Sols., Inc.,* 2016 WL 3081020, at *2 (W.D. Tex. May 31, 2016) (internal citations omitted).  Stated differently, "§ 1454 overruled the well-pleaded complaint rule when it comes to certain counterclaims, and specifically allows a defendant to remove a case based on the assertion of a copyright [or patent] counterclaim even if the case otherwise is completely devoid of federal jurisdiction."  *Donahue,*

2014 WL 12479285, at *4.

7.     Defendants' counterclaims "arise under" the federal patent laws. Consequently, removal to federal court is proper. *See Alexsam, Inc. v. Green Dot Corp.*, 2015 WL 6520917, at *4 (C.D. Cal. Sept. 28, 2015) (removal to federal court was proper where defendants alleged patent counterclaims in response to a breach of contract, declaratory judgment, and accounting of records complaint); *DEA Specialties Co. v. DeLeon*, 2014 WL 4385967, at *3 (W.D. Tex. Sept. 4, 2014) (finding removal appropriate and supplemental jurisdiction of all of state claims).

8.     On August 30, 2001, non-party Dell Products L.P. and Defendant Sonic Solutions LLC entered into a Software License Agreement ("SLA,"), whereby Sonic licensed various versions of its software products, sold under the trade name "Roxio Creator," to Dell Products L.P. Cnt-Compl. ¶ 105. The SLA provides, among other things, that "Sonic makes no representation or warranty regarding such infringement where … the infringement arises out of Sonic's compliance with any technical or commercial standards adopted by international organizations … or any other industry standards, … which are proprietary to third parties, specifically … MPEG … ." Cnt-Compl. ¶ 106. Additionally, the SLA provides that "Sonic shall [only] fully indemnify, defend and hold harmless Dell … from and against any and all claims … arising out of or in connection with any alleged or actual breach by Sonic and/or the Licensed Product(s) of any representations and/or warranties contained in this Agreement." Cnt-Compl. ¶ 107. Certain Roxio Creator software products are included under "Licensed Product(s)" in the SLA. Cnt-Compl. ¶ 108.

9.     On November 1, 2010, Sonic Solutions entered into a Clarification Agreement with Dell Global B.V., which confirmed that Dell Products L.P. assigned certain of its rights and obligations under the SLA to Dell Global B.V. Cnt-Compl. ¶ 110.

10. In 2010, Defendant Rovi Corporation acquired Sonic Solutions, but Sonic Solutions remained a separate operating company as it relates to Sonic's licensing of Roxio Creator software products.[1] Cnt-Compl. ¶ 109. On January 12, 2012, Rovi sold certain Sonic Solutions assets, including the software underlying the SLA described above, to non-party, Corel Corporation, a Canadian corporation ("Corel"). Cnt-Compl. ¶ 111. As part of this sale, the SLA between Dell Global B.V. and Sonic Solutions for the Roxio Creator software was transferred to Corel. Accordingly, Corel thereafter held all assets and liabilities associated with the Roxio Creator software products and license. Cnt-Compl. ¶ 112. Four years later, in April 2016, Rovi acquired TiVo, Inc. and through a series of transactions formed a new company TiVo Corporation. Rovi and TiVo Corporation remain separate operating companies. Cnt-Compl. ¶ 114.

11. Subsequent to this sale, on February 1, 2012, Dell Global B.V. and Sonic Solutions executed a Separation Agreement, whereby Dell Global B.V. agreed, on behalf of itself, Dell Inc., its subsidiaries and affiliates, that the Roxio-related agreements, including the SLA, would be assigned from Sonic to Corel, and that Dell would look solely to Corel with respect to any liabilities arising on or after the date of the agreement. Cnt-Compl. ¶ 113.

12. On December 21, 2015, the Audio MPEG Action was filed against a non-party, Dell Inc. *See* Compl. ¶ 2, Cnt-Compl. ¶ 115. The Audio MPEG Plaintiffs accused Dell Inc. computers with certain Roxio Creator software products, among other software, of infringing their MP2 and MP3 (i.e., MPEG) audio standards patents. Cnt-Compl. ¶ 115.

13. Specifically, the Audio MPEG Plaintiffs alleged that Dell Inc. infringed their MPEG-1 Audio Standard Layer II and MPEG-1 Audio Standard Layer III patents by

---

[1] Sonic Solutions no longer exists, but became Sonic Solutions LLC.

manufacturing, selling, or importing devices (including personal computers and mobile devices) which had the following installed software products:

    a.  CyberLink PowerDVD 8.3;

    b.  CyberLink PowerDVD 9.5;

    c.  CyberLink Media Suite Essentials (PowerDVD 10, PowerDirector 10, and Power2Go 8);

    d.  CyberLink Media Suite Premium (PowerDVD 10, PowerProducer v5, and Power2Go 8)

    e.  Roxio Creator Starter;

    f.  Roxio Creator 2011;

    g.  Roxio Creator Dell Edition 9;

    h.  Roxio Creator Dell Edition 10.2;

    i.  Roxio Creator Dell Edition 10.3;

    j.  Nero 9.  Cnt-Compl. ¶ 116.

14.    Among other defenses, Dell Inc. advanced the following defenses in the Audio MPEG Action:

    *a.*  The Dell Product Patents are not essential to the MPEG-1 or MPEG-2 Audio Standards;

    *b.*  Dell Inc.'s products do not infringe the Dell Product Patents;

    *c.*  The Dell Product Patents were anticipated and obvious;

    *d.*  The accused software programs did not have infringing functionality.  Cnt-Compl. ¶ 117.

15.    Dell Inc. also asserted that the Audio MPEG plaintiffs licensed their patents to

Microsoft in November 2, 2006 pursuant to an agreement ("Audio MPEG – Microsoft License Agreement"). The Audio MPEG – Microsoft License Agreement allows Microsoft to sell, license, or distribute software to third parties. Cnt-Compl. ¶ 118. Pursuant to the Audio MPEG – Microsoft License Agreement, Microsoft sold Dell a license to Windows. Accordingly, Dell's computers sold with Windows were licensed. In addition, Roxio Creator Starter, Roxio Creator 2011, Roxio Creator Dell Edition 9, Roxio Creator Dell Edition 10.2, and Roxio Creator Dell Edition 10.3 were all intended to and did use the Microsoft-licensed software in order to perform the functionality allegedly covered by the patents-in-suit. Cnt-Compl. ¶ 119.

16.     Dell Technologies Inc. and Dell Global B.V. claim that Dell Inc. ultimately settled the Audio MPEG Action infringement claims for a "significant amount, a large portion of which was directly associated with the infringing and unlicensed software of [Roxio Creator]." Compl. ¶ 2.

17.     Subsequent to the filing of the Audio MPEG Action, Dell requested indemnity and defense from Rovi. Rovi denied this request based, in part, on the Separation Agreement, and directed Dell Inc.'s defense and indemnification inquiries to Corel. Cnt-Compl. ¶ 120.

18.     In light of Rovi's denial of indemnification, Dell alleged fraudulent and negligent misrepresentations and omissions, as well as breach of the SLA. *See* Compl. ¶¶ 35-57. For their breach of contract claim, Plaintiffs allege that Defendants "breached the SLA by providing Roxio Creator software … infringed the intellectual property rights," Compl., ¶ 63, embodied in the Dell Product Patents for which Dell, Inc. ultimately settled the Audio MPEG Action.

19.     Dell claims that the damage which forms the basis of its suit against Defendants is the settlement that it paid to the Audio MPEG Plaintiffs: "Dell ultimately had to pay a significant amount to settle the [Audio MPEG] infringement claims… This suit is to hold TiVo

accountable for its action and make Dell whole"; "Because the Roxio Creator software had the ability to decode MP3 audio without using Microsoft software, Dell lacked its defenses of license and exhaustion in the Audio MPEG litigation for 26 million computers installed with Roxio Creator software.  Ultimately, Dell paid a significant amount to settle Audio MPEG's and Sisvel's infringement claims."  Compl., ¶¶ 2, 34.

20.    Based on these allegations, Defendants filed counterclaims for noninfringement and patent exhaustion of the Dell Product Patents.  These counterclaims are dispositive of the Plaintiffs' claims in this case.  If the Dell Product Patents are not infringed, or are in fact exhausted, then the essential basis of Plaintiffs' breach of contract claim fails.  Moreover, if, ultimately, Audio MPEG's intellectual property rights were not affected by Dell's computers containing Defendants' software, by virtue of being nonexistent, then Dell cannot show that it was harmed by any alleged conduct of the Defendants.  It merely elected to pay the Audio MPEG Plaintiffs an undisclosed amount of money for reasons of its own choosing.  But there is no causal connection between this payment and any actions taken by Defendants.

## II.    Removal Is Alternatively and Independently Proper Under 28 U.S.C. § 1332 and the Fraudulent Joinder Doctrine

21.    As an alternative and independent ground from 28 U.S.C. § 1454, the Court also has original jurisdiction of this Lawsuit under 28 U.S.C. § 1332 because there is complete diversity between the only appropriate parties to the Lawsuit and the amount in controversy, exclusive of interests and costs, exceeds $75,000.

22.    Plaintiff Dell Technologies Inc. is currently, and was at the time the Complaint was filed, a corporation that is organized and incorporated under the laws of Delaware with a principal place of business in Texas.  However, its presence in the Lawsuit must be ignored because it was fraudulently joined in order to defeat diversity jurisdiction.  Once Dell

8

Technologies Inc. is removed from the Lawsuit, there is complete diversity between the remaining parties as explained below.

23.     Plaintiff Dell Global B.V. is currently, and was at the time the Complaint was filed, a corporation that is organized and incorporated under the laws of The Netherlands with a principal place of business in Singapore.

24.     Defendant TiVo Corporation is currently, and was at the time the Complaint was filed, a corporation that is organized and incorporated under the laws of Delaware with a principal place of business in California.

25.     Defendant Rovi Corporation is currently, and was at the time the Complaint was filed, a corporation that is organized and incorporated under the laws of Delaware with a principal place of business in California.

26.     Defendant Sonic Solutions LLC is currently, and was at the time the Complaint was filed, a corporation that is organized and incorporated under the laws of California with a principal place of business in California.

27.     Defendant Sonic Solutions no longer exists because it has merged into Sonic Solutions LLC.  However, it was a corporation that was organized and incorporated under the laws of California with a principal place of business in California.

28.     An exception to the requirement of complete diversity occurs when a nondiverse plaintiff has been "fraudulently joined."  Joinder of a nondiverse plaintiff is deemed fraudulent, and the plaintiff's presence in the lawsuit is ignored for the purposes of determining diversity, where "there is no possibility that the plaintiff would be able to establish a cause of action against [] defendant[s] in state court."  *Miller v. Home Depot, U.S.A., Inc.*, 199 F. Supp. 2d 502, 507 (W.D. La. 2001)

29.     There is ample authority for finding that the fraudulent joinder doctrine can be applied to an alleged fraudulent plaintiff who was joined to avoid removal to federal court.  *See id.* at 508 (finding that nondiverse plaintiffs were fraudulently joined where they had no privity with the defendants in a products liability class action); *Guillot v. Credit Suisse Boston, L.L.C.,* 2005 WL 2037372, at *5 (E.D. La. July 21, 2005) ("The doctrine of fraudulent joinder is applicable to both plaintiffs and defendants."); *O'Neil Prods., Inc. v. ABC Sports, Inc.,* 2007 WL 1169357, at *3 (E.D. La. Apr. 19, 2007) (finding that a corporation was a fraudulent plaintiff because it lacked the procedural capacity to sue in the state).

30.     To determine whether "a plaintiff has a reasonable basis of recovery" that would defeat a claim of improper joinder, "[t]he court [will] conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant.  Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder."  *8000 Del Donore HOA-8000 Inc. v. Mid-Century Ins. Co.,* 2018 WL 2222847, at *2 (W.D. Tex. Apr. 30, 2018) (citing *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004)).

31.     Here, Dell Technologies Inc.'s inclusion in any of the asserted claims cannot survive a 12(b)(6) analysis.  The SLA was executed between Sonic Solutions and a non-party, and later assigned to Plaintiff Dell Global B.V.  Cnt-Compl. ¶¶ 105, 110.  Dell Technologies Inc. is neither a party to the contract nor an intended third party beneficiary.[2]  Consequently, it cannot assert a breach of contract claim.

---

[2]  "To determine whether the contracting parties intended to directly benefit a third party … [t]he contract must include a clear and unequivocal expression of the contracting parties' intent to directly benefit a third party, and any implied intent to create a third-party beneficiary is insufficient." *First Bank v. Brumitt*, 519 S.W.3d 95, 102 (Tex. 2017) (internal citations omitted). Here, the SLA is entirely devoid of any expression of intent to benefit a third party, let alone any

32.     Similarly, the alleged misrepresentations and omissions that are at the heart of Plaintiffs' negligent misrepresentations, fraudulent misrepresentations, and fraudulent nondisclosure claims were made to representatives of Dell Global B.V. that approached Rovi Corporation alleging breach of contract and seeking indemnity from Rovi Corporation.  Compl. ¶¶ 25-27.  Indeed, all of the communications concerning the contract, its alleged breach and indemnity, including the alleged representations and omissions, arose out the contractual relationship governed by the SLA and its subsequent amendments and clarifications, and occurred between Rovi Corporation's representative and representatives of Dell Global B.V., the only party with any basis to approach Rovi related to the SLA.  Cnt-Compl. ¶¶ 105, 110. Consequently, Dell Technologies Inc. may not assert these claims as well.  *See Prater v. Wackenhut Corr. Corp.,* 44 F. App'x 654 (5th Cir. 2002) (finding that plaintiff had no standing to assert a fraudulent misrepresentation claim when no misrepresentation was made to plaintiff, even where he *might* have been a third party beneficiary to the party to whom the fraudulent misrepresentation was made); *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.,* 51 S.W.3d 573, 578 (Tex. 2001) (holding that "a misrepresentation made through an intermediary is [only] actionable if it is intended to influence a third person's conduct").

33.     The amount in controversy also clearly exceeds the jurisdictional limit.  Plaintiffs have requested relief in the form of monetary damages and asked for the court to award punitive damages, as well as attorneys' fees.[3]  Moreover, Dell Global B.V. demanded damages from Defendants in excess of $75,000 arising out of the claims described above prior to filing this lawsuit.

---

clear or unequivocal expression of such intent for the benefit of Dell Technologies Inc.

[3]   Pursuant to 28 U.S.C. § 1446(c)(2)(A)(ii), "the notice of removal may assert the amount in controversy if the initial pleadings seek … a money judgment, but the State practice [] does not permit demand for a specific sum."

### III.     Supplemental Jurisdiction Exists Over Plaintiffs' State Law Claims

34.     "Federal courts have supplemental jurisdiction over state law claims that 'are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.'" *Team Express Distrib. LLC,* 2016 WL 3081020, at *3 (citing *Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 387 (1998)); *see also* 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."); *Hamilton v. Burlington N. Santa Fe Ry. Co.*, 2008 WL 8148619, at *11 (W.D. Tex. Aug. 8, 2008) ("The Supreme Court, interpreting the scope of the supplemental jurisdiction statute, 28 U.S.C. § 1367, noted that historically, in cases involving supplemental jurisdiction, the jurisdictional statutes should be read broadly, on the assumption that in this context Congress intended to authorize courts to exercise their full Article III power to dispose of an entire action before the court which comprises but one constitutional case.") (internal citations omitted).

35.     Where the plaintiff's state claims and the federal counterclaims "derive from a common nucleus of operative fact," they should be "tried in one judicial proceeding." *Team Express Distrib. LLC*, 2016 WL 3081020, at *3 (internal citations omitted).   Claims and counterclaims derive from the a common nuclear of operative fact where "[t]he issues of the case are factually intertwined and the [federal counterclaim] is not merely an appendage that can be separated and litigated independently in federal court." *Id.*

36.     "If a district court has supplemental jurisdiction, it may still decline to exercise it after consideration of the statutory factors set forth in 28 U.S.C. 1367(c) and the common law

factors of judicial economy, convenience, fairness, and comity." *Donahue*, 2014 WL 12479285, at *7. Here, both common law and statutory factors are in favor of the court exercising jurisdiction over Plaintiffs' state law claims.

      **1.**      **Plaintiffs' and Defendants' Claims Derive from the Same Common Nucleus of Operative Facts**

      37.      Plaintiffs' state law claims derive from the same common nucleus of operative facts as Defendants' patent law claims. The underlying issue for all the claims is whether the Dell products containing certain Roxio Creator software, among other software, infringe any valid, non-exhausted Dell Product Patent.

      38.      The Complaint makes it apparent that the alleged infringement of these patents predominates the parties' dispute. Plaintiffs allege that Audio MPEG and Sisvel "ha[d] the exclusive rights to grant licenses to third parties for certain U.S. and non-U.S. patent rights relating to the encoding and decoding of MP2 and MP3 audio." Compl. ¶ 21. "[Defendants were] aware of Audio MPEG's and Sisvel's [now resolved] infringement claims against Dell… [Defendants] began representing that the Roxio Creator software did not contain internal MP3 codecs and relied on Microsoft codecs to provide MP3 functionality." Compl. ¶ 22. "[Defendants also [were] aware that Audio MPEG and Sisvel [previously] claimed both MP2 and MP3 technology necessarily infringed their patents. [Defendants] understood that it was critical to Dell that the Roxio Creator software access and use the Microsoft Windows operating systems for encoding and decoding MP2 and MP3." Compl. ¶ 24.

      39.      Consequently, the reason why the alleged misrepresentations (and omissions) about the functionality of Roxio Creator software were actionable – the reason why Plaintiffs allege they relied on these statements, the reason why Plaintiffs allege they suffered harm as a result of these statements, and the reason why Plaintiffs allege these statements were material –

is because they affected Plaintiffs' understanding of Plaintiffs' legal rights and obligations with respect to the Dell Product Patents.

40.     In *Van Steenburg v. Harman,* the plaintiffs alleged state claim claims of breach of contract and conversion, to which defendants counterclaimed for "copyright infringement, misappropriation of trade secrets, conspiracy to misappropriate trade secrets, breach of contract, fraud, and fraud in a real estate transaction", and "a declaratory judgment of IP ownership." 2015 WL 1509940, at *7 (W.D. Tex. Mar. 31, 2015).  The court found that all of these "claims form part of the same common nuclear of operative fact, because they each involve the common issues of what the terms of the parties' agreement were and whether [plaintiff] breached them." *Id.* at *8; *see also DEA Specialties Co.,* 2014 WL 4385967, at *4 (finding jurisdiction over state law claims for breach of contract, negligence, gross negligence, tortious interference with prospective business relations, and fraud, and requests declaratory and injunctive relief because these claims were supplemental to the copyright infringement claim of the subject matter of the contract).  Just like the claims in *Van Steenburg* and *DEA Specialties*, here, all the claims revolve around one issue – whether the Roxio Creator software provided by Sonic Solutions to Dell Global B.V. under the SLA and installed on Dell's computers infringe any valid, non-exhausted Dell Product Patent.

41.     Here, the state law claims are "directly related" to the alleged patent law claims. Each of Plaintiffs' claims are based on the parties' contractual relationship.[4]  The alleged breach, misrepresentations and omissions are focused on a single issue -- whether the software provided by Sonic Solutions infringed the Dell Product Patents.  *See* Compl. ¶¶ 37, 44, 51, 62-64.  A

---

[4]    Plaintiffs allege that Defendants "had a duty to disclose" information to Plaintiffs.  *See* Compl. ¶ 38, 52.  However, parties to an arms-length negotiated contract do not typically owe a duty of disclosure to each other regarding the functioning of their products outside of the terms and conditions of the contract.

declaration that the Dell Product Patents are exhausted or not infringed would resolve Plaintiffs' claims.  The breach of contract claim is predicated on the provision of allegedly infringing Roxio Creator programs in violation the SLA; the fraudulent and negligent misrepresentation and the nondisclosure claims are predicated on the alleged harm that stemmed from the alleged reliance on the non-infringement of the Roxio Creator programs.  Hence, the court should exercise supplemental jurisdiction over each of Plaintiffs' state law claims.

### 2.    The Statutory and Common Law Factors Favor Supplemental Jurisdiction

42.    28 U.S.C. § 1367(c) lists four statutory factors for the court to consider in deciding to exercise its discretionary power to exercise supplemental jurisdiction.  "The district court may decline exercise supplemental jurisdiction over a claim if (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."  28 U.S.C. § 1367(c).  All four of these statutory discretionary factors point in favor of supplemental jurisdiction in this case.

43.    Plaintiffs claims for breach of contract, negligent misrepresentation, fraudulent misrepresentation, and fraudulent nondisclosure do not raise novel or complex issues of state law.  Even if Dell argues that its claims may be factually complex, it does not follow that they "raise any particularly novel issues of state law."  *See Team Express Distrib. LLC*, 2016 WL 3081020, at \*3 (finding that claims for fraudulent inducement, fraudulent misrepresentation, negligent misrepresentation, breach of contract, and breach of warranty did not present novel issues of state law).  Just as the plaintiffs' claims in *Team Express*, this factor weighs against the court exercising its discretion to decline jurisdiction.

44.     Plaintiffs' claims do not predominate over the patent law claims.  To the contrary, the patent law claims are at the heart of this suit.  As explained in detail above, Plaintiffs' claims for alleged breach, misrepresentations and omissions are focused on a single issue -- whether the software provided by Sonic Solutions infringed the Dell Product Patents.  *See* Compl. ¶¶ 37, 44, 51, 62-64.  A declaration that the Dell Product Patents are exhausted or not infringed would resolve Plaintiffs' claims.  The breach of contract claim is predicated on the provision of allegedly infringing Roxio Creator programs in violation the SLA; the fraudulent and negligent misrepresentation and the nondisclosure claims are predicated on the alleged harm that stemmed from the alleged reliance on the non-infringement of the Roxio Creator programs.

45.     The district court has not dismissed the claims over which it is has original jurisdiction and there are no exceptional circumstances for declining jurisdiction.  For all the reasons explained above, common law factors of judicial economy, convenience, fairness, and comity, as applied to this case, are in favor of the exercise of supplemental jurisdiction.

46.     Consequently, "it is appropriate for the Court to exercise supplemental jurisdiction over [Plaintiffs'] state law claims."  *See Team Express Distrib. LLC*, 2016 WL 3081020, at *3.

**Removal is Timely and Otherwise Proper**

47.     This Notice of Removal is timely filed.  28 U.S.C § 1446 states that a removal notice must be filed within 30 days of receipt of the initial pleading.  Plaintiffs served Defendants with this pleading on July 26, 2018.  This Notice of Removal is filed within 30 days of that service.  This Notice of Removal is, therefore, timely filed under 28 U.S.C. § 1446 (b).

48.     This action is not one described in 28 U.S.C. § 1445.

49.     Accordingly, removal of the Lawsuit to this United States District pursuant to 28 U.S.C. §§ 1441 and 1446 is proper because:

      a.   The Lawsuit asserts a claim for relief arising under an Act of Congress relating to patents; and

      b.   Complete diversity exists and the amount in controversy exceeds $75,000, exclusive of interests and costs.  Thus, this court has jurisdiction over this Lawsuit.

**Notice Given to State Court**

50.     Pursuant to 28 U.S.C. §1446(d), a copy of this notice of removal is being (1) filed concurrently with the Clerk of the District Court for Williamson County, Texas and (2) served on all parties to the Lawsuit as reflected in the certificate of service below.

**Conclusion**

51.     Removal to this Court is proper on §1454 grounds or, in the alternative, on diversity grounds.  Consent of the plaintiffs is not required, and this notice of removal is filed within 30 days of when all defendants were served with plaintiffs' state-court complaint.  By this notice Defendants do not waive any objections they may have as to service, jurisdiction, venue or sufficiency of Plaintiffs' pleading or claims, nor do Defendants waive any other objections or defenses they may have to this Lawsuit.  Defendants also intend no admissions of law, fact, or liability by this notice.  Defendants expressly reserve all defenses, motions, and pleas.

17

Respectfully submitted,


*/s/ Christopher D. Porter*
Christopher D. Porter
Texas Bar No. 24070437
Quinn Emanuel Urquhart & Sullivan LLP
711 Louisiana Street, Suite 500
Houston, TX 77002
713.221.7000 phone
713-221-7100 facsimile
chrisporter@quinnemanuel.com

*Attorney for Defendants TiVo Corporation, Rovi Corporation, Sonic Solutions LLC, and Sonic Solutions*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing notice was served upon the following counsel of record on August 8, 2018 by electronic mail, by facsimile, and by certified mail, return receipt requested:

R. Mark Dietz of Dietz & Jarrard, P.C. and John Thorne of Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C.

/s/ *Christopher D. Porter*
Christopher D. Porter

19