IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DELL TECHNOLOGIES INC. AND | § | |
| DELL GLOBAL B.V. (SINGAPORE | § | |
| BRANCH), | § | |
| PLAINTIFFS, | § | |
| | § | |
| V. | § | CAUSE NO. 1:18-CV-666-LY |
| | § | |
| TIVO CORPORATION, ROVI | § | |
| CORPORATION, SONIC SOLUTIONS | § | |
| LLC, AND SONIC SOLUTIONS, | § | |
| DEFENDANTS. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court in the above styled and numbered cause are Dell's Motion for Remand or, in the Alternative, to Dismiss filed August 29, 2018 (Dkt. No. 22), Defendants' Response in Opposition to Dell's Motion to Remand or, in the Alternative, to Dismiss filed October 26, 2018 (Dkt. No. 28), Dell's Reply in Support of its Motion for Remand or, in the Alternative, to Dismiss filed November 2, 2018 (Dkt. No. 34), Plaintiffs' Unopposed Motion to Provide Supplemental Authority filed February 19, 2019 (Dkt. No. 40), and Defendants' Response in Support of Plaintiffs' Unopposed Motion to Provide Supplemental Authority filed February 20, 2019 (Dkt. No. 41). On January 22, 2019, the court held a hearing on the motion at which all parties were represented by counsel. Having considered the motion, response, reply, supplemental authority, arguments of counsel, the applicable law, and the entire record in this cause, the court will grant the motion for the reasons to follow.

## I.     FACTUAL BACKGROUND

Gone are the days in which someone lugs around a Walkman, a CD player, or a portable DVD player in order to listen to music. Today, users can enjoy high-quality music and other

audio on small electronic devices, like phones and computers. Part of what makes this possible is MP3 technology, which allows audio files to be compressed and stored using less space, so that a user can store thousands of songs on a small device, rather than needing hundreds of CDs or DVDs. The process of creating MP2 or MP3 audio requires encoding an audio signal into the MP2 or MP3 format. The process of turning MP2 or MP3 audio into playable audio requires decoding the MP2- or MP3-formatted audio back into playable audio.

Plaintiff Dell Technologies Inc. ("Dell Technologies") is a Texas-based electronics seller. Dell Technologies is the parent company to hundreds of Dell subsidiaries around the globe.[1] In 2001, Defendant Sonic Solutions, the predecessor to Defendant TiVo Corporation, provided Dell with audio MP3 software, marketed as Roxio Creator, which Dell installed and sold on its computers. Defendant Rovi later acquired TiVo through a complex corporate merger, and Dell alleges that TiVo is a successor in interest to the liabilities of Sonic Solutions. Non-party Dell Products, L.P., a wholly-owned subsidiary of Dell Technologies, and Sonic Solutions LLC ("Sonic") entered into a software-licensing agreement effective August 30, 2001 ("Licensing Agreement" or "Agreement"). Pursuant to a 2010 clarification agreement ("Clarification Agreement"), Plaintiff Dell Global B.V. now holds all rights and obligations previously held by Dell Products, L.P. under the Licensing Agreement. The Clarification Agreement states that Dell Global holds the rights and obligations under the Licensing Agreement "on behalf of itself and each of its worldwide affiliates."

---

[1] When a case presents competing claims of varying parties, it is often hard to keep the claims of an individual party in focus. And using the legal designation of the parties is often hard for the reader to follow. Here, certain of the parties may be grouped with regard to issues where their interests do not diverge. For simplicity, the court will refer to the parties as follows, unless otherwise noted or needed for context: Plaintiffs Dell Technologies, Inc. and Dell Global B.V. (Singapore Branch) will be collectively referred to as "Dell." Defendants TiVo Corporation, Rovi Corporation, Sonic Solutions LLC, and Sonic Solutions will be collectively referred to as "TiVo."

As part of the Licensing Agreement, Sonic represented that "the Licensed Product(s) will operate substantially in accordance with its written specifications." The written specifications for Roxio software require that the Roxio software enable MP3 decoding capability by using Microsoft preloaded MP3 codec and not install any third-party MP3 codec. Dell alleges that Sonic represented that the Roxio software would leverage and use Microsoft Windows operating system for encoding, decoding, recording, and playing MP3 audio files in order to avoid potential liability for third-party royalties. This representation is important because a third party, Audio MPEG, Inc., holds the exclusive rights to grant licenses to third parties for certain U.S. and non-U.S. patent rights relating to the encoding and decoding of MP3 audio. One of Audio MPEG's licensees is Microsoft, which permits Microsoft to sell software capable of encoding and decoding MP3 audio. Dell alleges it relied on the written specifications and repeated representations made by Sonic that Roxio would not utilize third-party codec when it installed and continued to sell Roxio software on Dell computers.

The Licensing Agreement also states that "the Licensed Product(s) shall not infringe any copyright, patent, trade secret or any other intellectual property rights or similar rights of any third party." Finally, under the Agreement, Sonic agreed to fully indemnify, defend, and hold Dell harmless "from and against any and all claims, actions, suits, legal proceedings, demands, liabilities, damages, losses, judgments, settlements, costs and expenses, including, without limitation, attorneys' fees, arising out of or in connection with any alleged or actual . . . breach by Sonic and/or the Licensed Product(s) of any other representations and/or warranties contained in this Agreement." Sonic, at its own expense, must "procure for Dell the right to exercise the rights and licenses granted to Dell under this Agreement or modify the Licensed Product(s) such

3

that it is no longer infringing . . . and reimburse Dell for any royalty payments paid for the Licensed Product(s)."

In 2015, Audio MPEG sued Dell Inc. in the United States for patent infringement based, in part, for having distributed the Roxio software. *See Audio MPEG, Inc. v. Dell Inc.*, No. 2:15-cv-73 (E.D. Va.).[2] Audio MPEG's parent company Sisvel sued Dell Inc. and Dell GmbH in Germany for patent infringement also based, in part, on sales of the Roxio software.[3] During the course of the litigation, Dell learned that the Roxio software included unlicensed MP3 functionality and did not use the pre-programed Microsoft functionality for encoding and decoding MP3. Dell states that before settling and during the litigation, Dell requested that TiVo indemnify and defend Dell, but TiVo refused. Dell Technologies—as the parent company of Dell Inc., Dell GmbH, and Dell Global B.V.—entered into a settlement agreement and license with Audio MPEG, Sisvel, and the patent owners to resolve, *inter alia*, the infringement claims related to the distribution of Roxio's software.

Dell Technologies and Dell Global B.V. filed suit in Texas state court asserting the following state-law claims against TiVo: (1) negligent misrepresentation, (2) fraudulent misrepresentation, (3) fraudulent nondisclosure, and (4) breach of contract. Dell claims that TiVo breached the Licensing Agreement in three ways: (1) the Roxio software did not follow the

---

[2] The patents at issue are owned by U.S Philips Corp., TDF SAS, and Institute für Rundfunktechnik GmbH (referred to as the "patent owners"). *See Audio MPEG, Inc. v. Dell Inc.*, 254 F. Supp. 3d 798, 801 (E.D. Va. 2017). Audio MPEG and its European parent, Societá Italiana per lo Sviluppo dell'Elettronica S.p.A. ("Sisvel"), hold the exclusive right to license those patents. *Id.*

[3] *See generally Societá Italiana per lo Sviluppo dell'Elettronica S.p.A. v. Dell GmbH*, No. 7 O 148/16 (Landgericht Mannheim) (Ger.); *Societá Italiana per lo Sviluppo dell'Elettronica S.p.A. v. Dell Inc.*, No. 7 O 149/16 (Landgericht Mannheim) (Ger.); *Societá Italiana per lo Sviluppo dell'Elettronica S.p.A. v. Dell GmbH*, No. 7 O 184/17 (Landgericht Mannheim) (Ger.); *Societá Italiana per lo Sviluppo dell'Elettronica S.p.A. v. Dell GmbH*, No. 7 O 185/17 (Landgericht Mannheim) (Ger.). For ease of reference, both cases will be referred to as "the litigation."

written specifications related to the software functionality; (2) the Roxio software infringed on the intellectual property rights of a third party; (3) TiVo did not comply with its obligations to indemnify, defend, and hold harmless Dell for its losses resulting from Roxio's infringement. Dell's misrepresentation and nondisclosure claims are based on repeated representations made by TiVo that Roxio contained the proper functionality.

TiVo answered, asserting defenses of noninfringement and patent exhaustion. TiVo also asserted counterclaims seeking a declaratory judgment that the Roxio software did not infringe on the Audio MPEG patents and that the Audio MPEG patents were exhausted by a third-party license with Microsoft.

TiVo then removed the case to this court, asserting jurisdiction under Sections 1331, 1332, 1441, 1454, 1446. TiVo asserts that this court has diversity jurisdiction under Section 1332, because Dell improperly joined Dell Technologies, a non-diverse plaintiff, in state court in order to defeat diversity jurisdiction. *See* 28 U.S.C. §§ 1332, 1441. TiVo also asserts that this court has jurisdiction under Section 1454, because TiVo's counterclaims for a declaration of noninfringement and patent exhaustion arise under federal patent law. *See* 28 U.S.C. § 1454. Finally, TiVo asserts that this court has original jurisdiction to hear this case under Section 1331, because Dell's state-law claims arise under federal patent law. The owners of the Audio MPEG patents, Audio MPEG, and Sisvel are not parties to this case.

Dell moves to remand this case to state court, claiming that Dell Technologies is not improperly joined and that this court lacks subject-matter jurisdiction over TiVo's counterclaims and Dell's state-law claims, because the claims do not arise under federal patent law.

## II.    DIVERSITY JURISDICTION AND IMPROPER JOINDER

For the purposes of diversity jurisdiction, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated." 28 U.S.C. § 1332(c)(1). Plaintiff Dell Technologies is incorporated in Delaware, and Plaintiff Dell Global B.V. is incorporated in The Netherlands. Defendants TiVo Corporation and Rovi Corporation are incorporated in the Delaware, and Defendant Sonic Solutions LLC is incorporated in California. Because one of the Plaintiffs, Dell Technologies, and two of the Defendants, TiVo and Rovi, are citizens of Delaware, there is not complete diversity of citizenship between the Plaintiffs and Defendants as pleaded. *See* 28 U.S.C. § 1332(a)(1).    TiVo argues, however, that Dell Technologies was improperly joined in order to defeat federal diversity jurisdiction.

A party seeking to remove bears the burden of showing that federal jurisdiction exists and that removal was proper. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citing *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000)).    The removal statutes are construed restrictively, so as to limit removal jurisdiction. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941). Any ambiguities are construed against removal and in favor of remand to state court. *Id.* A plaintiff may seek to have a case remanded to the state court from which it was removed, if the district court lacks jurisdiction over the case or if there is a defect in the removal procedure. 28 U.S.C. § 1447(c).

"The starting point for analyzing claims of improper joinder must be the statutes authorizing removal to federal court of cases filed in state court." *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 572 (5th Cir. 2004) (en banc). Section 1441 allows for the removal of a state-court suit where all parties are diverse. *See* 28 U.S.C. §§ 1441(b), 1332(a). Even if the parties are completely diverse, a district court may not exercise its diversity jurisdiction, however, if

"any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court." 28 U.S.C. § 1359; *see also* 28 U.S.C. § 1441(b) ("A civil action otherwise removable solely on the basis of [diversity jurisdiction] may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.").

Joinder of a non-diverse plaintiff is deemed improper, and that plaintiff's presence in the lawsuit is ignored for the purposes of determining diversity, where there is no reasonable possibility that the plaintiff would be able to establish a cause of action against a defendant in state court. *See Smallwood*, 385 F.3d at 573. "The burden of persuasion on those who claim [improper] joinder is a heavy one," *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003), and TiVo must show that "there is no reasonable basis for the district court to predict that [Dell Technologies] might be able to recover against [TiVo]." *Smallwood*, 385 F.3d at 573. To determine whether Dell Technologies can reasonably establish a cause of action against TiVo, the court conducts "a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." *Id.* "All unchallenged factual allegations, including those alleged in the complaint," must be viewed "in the light most favorable to [Dell Technologies]" and "[a]ny contested issues of fact and any ambiguities of state law" must be resolved in [Dell Technologies'] favor. *Travis*, 326 F.3d at 649. Importantly, the court does not determine "whether the plaintiff will actually or even probably prevail on the merits of the claim, but look[s] only for a possibility that the plaintiff might do so." *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 309 (5th Cir. 2005).

## A. Breach of Contract

TiVo argues that Dell Technologies cannot state a breach-of-contract claim because Dell Technologies is not a signatory or third-party beneficiary to the Licensing Agreement. Dell Products L.P. was the original signatory to the Agreement, and under the Clarification Agreement, Dell Global B.V. now holds all rights and obligations previously held by Dell Products, L.P. under the Agreement "on behalf of itself and each of its worldwide affiliates." Dell contends that Dell Technologies, as the parent company of Dell Global B.V., is a third-party beneficiary of the Agreement between Dell Global B.V. and TiVo and must be indemnified under the Agreement in the event of a breach.

In diversity cases, "substantive law . . . is established by the usual principles of conflict of laws, but procedural rules are the rules of the forum." *Condit Chem. & Grain Co. v. Helena Chem. Corp.*, 789 F.2d 1101, 1102 (5th Cir. 1986); *see also Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) (state law applies except when issue is governed by federal law). The parties agree the Licensing Agreement is governed by Texas law. A party who is not a signatory to a contract may "sue for damages caused by its breach if the person qualifies as a third-party beneficiary." *First Bank v. Brumitt*, 519 S.W.3d 95, 102 (Tex. 2017). "[A]s a general proposition, a corporate parent is not a third-party beneficiary of its subsidiary's contract merely by virtue of their relationship." *Basic Capital Mgmt., Inc. v. Dynex Commercial, Inc.*, 348 S.W.3d 894, 900 (Tex. 2011). However, contracting parties may "intend[] to grant the third party the right to be a claimant in the event of a breach." *Brumitt*, 519 S.W.3d at 102. "To determine whether the contracting parties intended to directly benefit a third party and entered into the contract for that purpose, courts must look solely to the contract's language, construed as a whole." *Id.*

Under the language of the Licensing Agreement, Dell Technologies is a third-party beneficiary to the Agreement capable of suing for the Agreement's breach under Texas law. Dell Products L.P. entered into the Agreement with Sonic; however, the indemnification clause of the Agreement expressly designates *all* Dell subsidiaries and affiliates as beneficiaries of the representations and warranties of the Agreement. Section 7.1 of the Licensing Agreement provides that Sonic "shall fully indemnify, defend and hold harmless Dell [Products L.P.], Dell Computer Corporation, Dell Computer Corporation's subsidiaries and affiliates . . . and their successors and assigns" for claims "arising out of or in connection with any alleged or actual" breach of Sonic's "representations and/or warranties." Likewise, the Clarification Agreement defines the term "Dell" in to mean "Dell Global [B.V.]. . . Dell Products L.P., Dell Inc. and each Subsidiary and affiliate of Dell Inc."

"Affiliate" is not defined in either the Licensing Agreement or Clarification Agreement. TiVo asserts that the term "affiliate" is limited to subsidiaries. Where a term is not "defined in the contract" its "ordinary meaning must be used." *Eckland Consultants, Inc. v. Ryder, Stilwell Inc.*, 176 S.W.3d 80, 88 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (looking to Black's Law Dictionary to define "affiliate" in contract). Contemporaneous legal dictionaries define "affiliate" to include a controlling parent company: "[a] corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation." *Affiliate*, Black's Law Dictionary 59 (7th ed. 1999).[4] The Licensing and Clarification Agreements confirm that definition. They name parent companies as exemplars—Dell Computer Corporation and Dell Inc.—and use the term "subsidiary" in addition to the term

---

[4] This court uses the Seventh Edition of Black's Law Dictionary, because that was the edition in use when the Agreement became effective on August 30, 2001.

"affiliate," suggesting the term "affiliate" must have an additional meaning beyond "subsidiary," otherwise it would be superfluous.

The language of the Licensing and Clarification Agreements are broad in what entities are considered affiliates. Dell and Sonic, however, are sophisticated parties. They both agreed to the Licensing Agreement containing an express right of indemnification for Dell affiliates injured by Sonic's breaches of representations and warranties. That Dell Technologies is or may be a third-party beneficiary to the Agreement extends beyond its status as the parent company of Dell Global and Dell Products. Dell Technologies is a third-party beneficiary because the specific language of the Licensing and Clarification Agreements allows "each" Dell affiliate—including Dell Technologies—to seek redress for Sonic's breaches of contract. Broad though the language is, it is what Sonic agreed to by contract, presumably in exchange for other binding promises by Dell.

Sonic, TiVo's predecessor,[5] represented to Dell in the Licensing Agreement that the Roxio would comply with the Agreement's provisions about the software's functionality. The Roxio software did not operate as specified. As a result of that breach of the Agreement, Dell Inc. and Dell GmbH were sued for patent infringement in the United States and Germany, and Dell Technologies settled the claims on behalf of the entire Dell corporate family. Dell Technologies, as the parent company, wrote the settlement check to settle the claims against the Dell entities named in the suits. Dell Technologies—an affiliate under the agreement—now seeks a remedy for which the agreement explicitly provides—damages resulting from "a breach by [TiVo] and/or the Licensed Product(s) of any other representations and/or warranties contained in [the] Agreement."

---

[5] The following account of the facts is presented in the light most favorable to Dell, as this issue comes to the court in a motion-to-dismiss posture. *Smallwood*, 385 F.3d at 573.

When TiVo failed to defend Dell Inc. and indemnify Dell Technologies for the settlement paid in the suits, TiVo created not only the *possibility* Dell Technologies would be a proper plaintiff under the Licensing Agreement in a suit against TiVo for breach of the Agreement, but a *likelihood* that Dell Technologies would take the action it did. TiVo has not met its burden to show there is no "reasonable basis" under Texas law that Dell Technologies may be able to recover against TiVo for breach of contract as a third-party beneficiary under the Agreement. *Cf. Irby*, 326 F.3d at 649; *Smallwood*, 385 F.3d at 573.

### B. Tort Claims

Dell also alleges that "TiVo repeatedly represented to Dell that the Roxio Creator software used or would use the Microsoft Windows operating system," and that "Dell . . . rel[ied] on TiVo's renewed representations [regarding the Microsoft-licensed functionality]." TiVo contends that Dell Technologies may not assert tort claims against TiVo, because the claims did not arise out of any representation made specifically to Dell Technologies.[6] However, in considering a motion to remand, the court accepts as true Dell's allegations that TiVo made certain representations to the entire Dell corporate family about the functionality of the Roxio software. *Smallwood*, 385 F.3d at 573. TiVo does not put "forward evidence that would negate a possibility of liability," *Irby*, 326 F.3d 650–51, and does not meet its high burden in showing that "there is no reasonable basis . . . to predict that [Dell Technologies] might be able to recover against" TiVo. *Smallwood*, 385 F.3d at 573–74.

---

[6] TiVo also contends that the tort claims arose out of the Licensing Agreement, to which Dell Technologies was not a signatory. As with the breach-of-contract claim, there is a reasonable possibility that Dell Technologies may recover under the Agreement for misrepresentations made by TiVo.

In sum, TiVo has not met its burden in proving that Dell improperly joined Dell Technologies to the lawsuit in order to destroy diversity. Because the parties are not completely diverse, TiVo cannot rely on diversity jurisdiction.

## III.    REMOVAL UNDER SECTION 1454

Article III of the Constitution limits the exercise of the judicial power to the "resolution of 'cases' and 'controversies.'" *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982). In addition to the constitutional case-or-controversy requirement, jurisdiction is "is further limited to those subjects encompassed within a statutory grant of jurisdiction." *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U. S. 694, 701 (1982). TiVo contends this court has jurisdiction under the patent-removal statute. *See* 28 U.S.C. § 1454.

Section 1454 allows for removal of any "civil action in which any party asserts a claim for relief arising under any Act of Congress relating to patents." 28 U.S.C. § 1454. This provision was "intended to provide federal courts . . . with a broader range of jurisdiction; that is, with jurisdiction over claims arising under the patent laws even when asserted in counterclaims, rather than in an original complaint." *Vermont v. MPHJ Tech. Investments, LLC*, 803 F.3d 635, 644 (Fed. Cir. 2015).[7] A claim for relief "aris[es] under" federal law in two ways: (1) where "federal law creates the cause of action asserted," and (2) in a "special and small category of cases" brought under state law in which arising-under jurisdiction still attaches. *Id.* at 645

---

[7] The court applies Federal Circuit law in its interpretation and application of the patent-removal statute and Fifth Circuit law where the analysis relates to "procedural issue[s] not unique to patent law." *Versata Software, Inc. v. Callidus Software, Inc.*, 780 F.3d 1134, 1136 (Fed. Cir. 2015).

(quoting *Gunn v. Minton*, 568 U.S. 251, 256–59 (2013)).[8] TiVo presses two counterclaims that it asserts arise under the patent laws: (1) a declaration of noninfringement, and (2) a declaration of patent exhaustion. The Declaratory Judgment Act does not "extend" a federal court's jurisdiction; a separate statute must confer jurisdiction over the action. *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 196–97 (2014). Thus, TiVo's counterclaims for declaratory judgment cannot serve as the basis for this court's jurisdiction under Section 1454 unless the counterclaims arise independently under federal patent law.

Federal law "creates" various patent causes of action, including a claim by a patentee of infringement. *See* 35 U.S.C. §§ 271, 281. Discerning whether TiVo's claims arise under federal law is complicated by the fact that they are counterclaims for declaratory judgment, and not stand-alone causes of action, such as a cause of action for patent infringement. In the patent context, when "determining declaratory judgment jurisdiction" courts often look to "the character of the threatened action" and "the nature of the threatened action in the absence of the declaratory judgment suit." *Medtronic*, 571 U.S. at 196–97 (holding that action by licensee against patent holder seeking declaration of noninfringement or invalidity arises under federal patent law where patent holder could bring infringement action against licensee). And courts also ask "whether a coercive action brought by a declaratory judgment defendant . . . would necessarily present a federal question." *Id.* at 197 (internal quotation and citations omitted). Thus, there must typically be "an underlying legal cause of action" arising under patent law "that the declaratory defendant could have brought or threatened to bring." *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1344 (Fed. Cir. 2007). An infringement cause of action belongs

---

[8] The *Vermont* court noted that it had not yet reviewed "removal under [Section 1454]" or considered "how that newly enacted provision should be interpreted in light of the other amendments to jurisdictional statutes adopted in the [America Invents Act]." *Vermont*, 803 F.3d at 652. This remains true today.

to the person with an enforceable title to the patent. *See Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093 (Fed. Cir. 1998).

Neither the Supreme Court nor the Federal Circuit have established a bright-line rule for discerning whether a declaratory-judgment claim arises under patent law. Nonetheless, a review of Federal Circuit cases reveals that the Federal Circuit has recognized district-court jurisdiction over declaratory-judgment counterclaims of noninfringement in two categories of cases: (1) where the party sued is a patent owner or an exclusive licensee; *see id.*, or (2) between a patent holder and a manufacturer where the manufacturer is obligated to indemnify its customers or the manufacturer is subject to liability for induced or contributory infringement. *See Arris Grp., Inc. v. British Telecommunications PLC*, 639 F.3d 1368, 1374 (Fed. Cir. 2011).

TiVo argues that courts have routinely rejected a "cause-of-action theory"—that is, a declaratory-judgment plaintiff must have a cause of action against the declaratory-judgment defendant—to determine declaratory-judgment jurisdiction. The cases TiVo cites for this proposition, however, all involve actions against the patent owner or exclusive licensee. *See Alexsam, Inc. v. Green Dot Corp.*, No. 2:15-cv-05742-CAS(PLAx), 2015 WL 6520917, at *1 (C.D. Cal. Sept. 28, 2015) ("This dispute arises out of a settlement agreement . . . regarding certain patents owned by [plaintiff]."); *Gen. Elec. Co. v. NeuroGrafix*, No. 2:12-cv-4586-MRP, 2012 WL 12888331, at *6 (C.D. Cal. Sept. 28, 2012) ("The declaratory judgment defendant . . . is the exclusive licensee of a medical imaging patent."); *Arris Grp., Inc. v. British Telecomms. PLC*, 639 F.3d 1368, 1375 (Fed. Cir. 2011) ("seeking a declaratory judgment that claims in [defendant]'s patents . . . are invalid and not infringed by [plaintiff]"); *ABB Inc. v. Cooper Indus., LLC*, 635 F.3d 1345, 1346 (Fed. Cir. 2011) ("seeking a declaration of noninfringement as to the claims of several [defendant] patents"; *WS Packaging Grp., Inc. v. Glob. Commerce Grp.,*

LLC, 505 F. Supp. 2d 561, 563 (E.D. Wis. 2007) ("seeking a determination that [plaintiff] is not infringing on [defendant]'s patent for internet game pieces").

TiVo does not direct this court to authority approving of a declaratory-judgment action in which the patent owner or exclusive licensee was absent from the suit. A review of Federal Circuit cases leads this court to the conclusion that in order to have a jurisdiction over TiVo's counterclaim for noninfringement, the court must also have jurisdiction over a patent-infringement complaint brought by Dell—the declaratory-judgment defendant. If Dell cannot bring an infringement action, then TiVo's counterclaim likewise cannot arise under federal patent law. *See ExcelStor Technology, Inc. v. Papst Licensing GMBH & Co. KG*, 541 F.3d 1373, 1376–77 (Fed. Cir. 2008) (federal court lacked jurisdiction where declaratory judgment defendant could not bring an infringement action against plaintiff); *Speedco, Inc. v. Estes*, 853 F.2d 909, 913 (Fed. Cir. 1988) (court lacked jurisdiction where declaratory-judgment plaintiff could only be sued for breach of contract, not for patent infringement).

Dell does not own the patent at issue; nor is it an exclusive licensee. Dell is unable to bring an action for patent infringement against TiVo because "only a patent owner or an exclusive licensee can have constitutional standing to bring an infringement suit." *Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1317 (Fed. Cir. 2010) (quoting *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1367 (Fed. Cir. 2008)). There is no precedent for a declaratory judgment in the absence of the patent owner, where the patents are expired, the underlying patent-infringement case is settled, and the patents are fully licensed.[9] Accordingly, patent law cannot *create* the cause of action asserted by TiVo—that of noninfringement—because patent law does not allow for the mirror action of infringement by

---

[9] TiVo does not contend that Dell or TiVo could currently be sued for patent infringement.

Dell. Because TiVo's request for a declaration of noninfringement does not "arise[] under any Act of Congress relating to patents," TiVo's noninfringement counterclaim does not support this court's jurisdiction.

Dell also asserts that TiVo's counterclaim for patent exhaustion does not arise under patent law because there is no federal cause of action for patent exhaustion, and thus not a mirror declaratory cause of action. Dell is correct that "patent exhaustion is a defense to patent infringement, not a cause of action." *ExcelStor Technology*, 541 F.3d at 1376. Again, because Dell cannot bring a patent infringement suit against TiVo, TiVo cannot seek a declaration of patent exhaustion against Dell. Thus, the patent-exhaustion counterclaim likewise does not confer this court with jurisdiction under Section 1454.

## IV. REMOVAL OF DELL'S STATE LAW CLAIMS

In addition to Section 1454 and Section 1338, TiVo asserts in its reply that Dell's state-law claims arguably arise under the patent laws. A state-law claim may arise under federal law "in a special and small category of cases," if the "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balances of federal and state judicial responsibilities." *Gunn*, 568 U.S. at 256–59. All four factors must be met, and "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 813 (1986).

### 1. Necessarily raised

A federal issue is "necessarily raised" by a claim if the court must address that issue in order to resolve the claim. *See Gunn*, 568 U.S. at 259 (issue of patent law is "necessary" to case if court would have to apply it to resolve plaintiff's state law-based legal malpractice

claim); *Grable*, 545 U.S. at 345 (federal issue necessarily raised where the United States government's compliance with federal statute was "essential element" of plaintiff's claim).

Here, a federal issue sounding in patent law is necessarily raised only by Dell's breach-of-contract claim.[10] Dell alleges three ways in which TiVo breached the Licensing Agreement: (1) by providing products that did not operate substantially in accordance with the written specifications, as represented and warranted; (2) by providing Roxio Creator software that infringed the intellectual property rights of a third party. Such infringement arose out of TiVo's wrongful inclusion of a separate MP3 codec and failure to enable MP3 decoding capability by using Microsoft preloaded MP3 codec; and (3) by failing to fully indemnity, defend and hold harmless Dell for its losses, including the settlement with Audio MPEG and Sisvel and predicates its breach of contract claim on attorneys' fees, costs, and expenses Dell incurred defending itself in the suits brought by Audio MPEG and Sisvel and repayment of royalties previously paid by Dell.

Dell expressly places infringement at issue by alleging that TiVo breached the Licensing Agreement "by providing Roxio Creator software that infringed the intellectual property rights of a third party." In order to satisfy the "breach" element, Dell would have to prove that TiVo's product was infringing. No court has yet had the opportunity to pass on whether the Roxio software was infringing or whether the patent was exhausted by a license to Microsoft, because the previous infringement case settled before the court reached a ruling on the merits of the infringement and exhaustion claims. Dell's breach of contract claim necessarily raises whether the Roxio software was infringing and in breach of the Licensing Agreement. *Cf. Gunn*, 545 U.S. at 258–59.

---

[10] TiVo does not contend that Dell's tort claims arise under patent law.

Dell argues that under Texas law, a settling indemnitee such as Dell is not required to show that TiVo was actually liable for the patent infringement that resulted in its settlement with Audio MPEG and the patent owners; Dell need only demonstrate a "potential liability and that [its] settlement was reasonable, prudent and in good faith under the circumstances." *Fireman's Fund Ins. Co. v. Commercial Standard Ins. Co.*, 490 S.W.2d 818, 824 (Tex. 1972), *overruled on other grounds by Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705 (Tex. 1987). This might be true of whether TiVo breached the Licensing Agreement for failing to indemnify Dell, but Dell claims that TiVo breached the Licensing Agreement in two other ways. This court does not read *Fireman's Fund* as persuasive or even relevant authority as to whether a court can hold TiVo liable for breaching the Licensing Agreement because Roxio creator infringed on the Audio MPEG patents. This court concludes that Dell's breach-of-contract claim necessarily raises a federal issue of patent infringement.

### 2. Actually disputed

The issue of infringement is also "actually disputed." Dell asserts that the Roxio software infringed on the Audio MPEG patents; TiVo disputes that the Roxio software infringed the Audio MPEG patents and also contends that the patents were exhausted by a license to Microsoft. *Cf. Gunn*, 545 U.S. at 259.

### 3. Substantial

In considering whether a disputed issue is a substantial federal issue, "it is not enough that the federal issue be significant to the particular parties in the immediate suit; that will *always* be true when the state claim 'necessarily raise[s]' a disputed federal issue, as *Grable* requires." *Gunn*, 568 U.S. at 260 (emphasis and brackets in original). Rather, "[t]he substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system

as a whole." *Id.* In *Gunn*, the court considered whether the case was "substantial" by analyzing whether the case was "backward looking," "merely hypothetical," and not likely to "change the real-world result of the prior federal patent litigation." *Id.* at 261. The Court in *Gunn* concluded the state-law claims did not meet the substantiality requirement because the legal-malpractice claim entailed a "merely hypothetical," backward-looking review of a lawyer's conduct related to an invalid patent. As the Federal Circuit recently observed, "the Court's decision in *Gunn* could be read to imply that whether the patent question at issue is substantial depends on whether the patent is 'live' such that the resolution of any question of patent law is not 'merely hypothetical.'" *Xitronix Corp. v. KLA-Tencor Corp.*, 757 F. App'x 1008, 1010 (Fed. Cir. 2019) (citing *Gunn*, 568 U.S. at 261).

Dell's state-court complaint asserts that TiVo's alleged infringement is central to the dispute Dell seeks to resolve through state-law claims sounding in tort and contract. Dell was sued for patent infringement in Virginia because TiVo's product allegedly infringed on third-party patents—in breach of the Licensing Agreement—and TiVo's products did not operate according to the agreed upon functionality—also in breach of the Licensing Agreement. Dell also seeks reparations for the alleged misrepresentations made by TiVo before and during the *AudioMPEG* suit. And the measure of damages sought by Dell would be related, in part, to the settlement Dell paid in the *AudioMPEG* suit.

Thus, if Dell continues to press its claims that TiVo's product infringed in breach of the Licensing Agreement, some court will have to determine whether or not TiVo's product did in fact infringe. In that sense, the federal patent issue—infringement—plays a more central role in the resolution of this case than did the state-law claim in *Gunn* and it is not a hypothetical question. On the other hand, the facts of this case are unique: the prior patent case is finished;

neither the patent owner nor an exclusive licensee is joined in this lawsuit; and the patents are now fully licensed as to the products TiVo supplied to Dell. Perhaps of most importance, the patents are now expired, which obviates the potential for a future infringement action against TiVo. Even though the resolution of the infringement issue would no doubt affect the parties to this suit, much like the facts of *Gunn*, an infringement determination is still "backward looking" as it would not "change the real-world result of the prior federal patent litigation." *Gunn*, 568 U.S. at 261. Accordingly, under the reasoning of *Gunn*, Dell's state-law claims are not "substantial" to the federal system as a whole.

### 4. Federal-state balance

Finally, when examining whether an issue is "capable of resolution in federal court without disrupting the federal-state balance approved by Congress," *Gunn*, 568 U.S. at 258, a court must consider whether an exercise of jurisdiction would "materially affect, or threaten to affect, the normal currents of litigation." *Grable*, 545 U.S. at 319. In essence, this factor requires courts to examine whether an exercise of jurisdiction would force categories of cases traditionally brought in state court into the federal system. *See Gunn*, 568 U.S. at 264 (noting the States have a "special responsibility for maintaining standards among members of the licensed professions," and concluding "[w]e have no reason to suppose that Congress—in establishing exclusive federal jurisdiction over patent cases—meant to bar from state courts state legal malpractice claims simply because they require resolution of a hypothetical patent issue." (internal citations and quotation marks omitted)); *Grable*, 545 U.S. at 319 (comparing the "rare" type of case before the Court, which would not impact the ordinary division of responsibilities between the state and federal judiciaries if federal subject-matter jurisdiction were found to exist,

with the situation in *Merrell Dow*, 478 U.S. 804, which "would thus have heralded a potentially enormous shift of traditionally state cases into federal courts.").

Federal patent law is necessarily raised and disputed in this case, but under *Gunn*, it does not outweigh the interest of the state in regulating agreements and misrepresentations covered by state law. *See Aronson v. Quick Point Pencil Co.*, 440 U.S. 257, 262 (1979) ("Commercial agreements traditionally are the domain of state law. . . . [s]tate law is not displaced merely because the contract relates to intellectual property which may or may not be patentable"). As the Court reemphasized in *Gunn*, "[f]ederal courts have exclusive jurisdiction of all cases arising under the patent laws, but not of all questions in which a patent may be the subject-matter of the controversy." 568 U.S. at 264 (quoting *New Marshall Engine Co. v. Marshall Engine Co.*, 223 U.S. 473, 478 (1912)). As in *Gunn*, allowing this case to proceed forward in federal court would disrupt federal-state balance, and diminish the role of the state of Texas in regulating commercial agreements and misrepresentations.

In sum, Dell's breach-of-contract claim necessarily raises a disputed question of federal law; however, it does not arise under patent law because it not substantial enough to the federal system as a whole and does not outweigh the state's interest in enforcing commercial agreements.

V. **CONCLUSION**

TiVo's counterclaims and Dell's state-law claims do not arise under federal law, and TiVo failed to prove that Dell improperly joined Dell Technologies in order to defeat diversity.

**IT IS THEREFORE ORDERED** that Dell's Motion for Remand or, In the Alternative, to Dismiss filed August 29, 2018 (Dkt. No. 22) is **GRANTED** to the extent that this case is **REMANDED** to the 26th Judicial District Court of Williamson County, Texas.

SIGNED this _____6th_____ day of June, 2019.

_____
LEE YEAKEL
UNITED STATES DISTRICT JUDGE